# REPORTS OF CASES

DETERMINED IN THE

# SUPREME COURT,

## DECEMBER TERM, 1874.

---

## J. N. DOLPH, RESPONDENT, *v.* HARLOW BARNEY, APPELLANT.

DONATION ACT—A GRANT IN PRÆSENTI.—The Donation Act is a grant *in præsenti* of an estate in fee, subject to be defeated by non-compliance with the conditions subsequent therein expressed.

IDEM.—Upon compliance with the requirements of said act, title vests in virtue of the act itself.

PATENT—ISSUING OF, A MINISTERIAL ACT.—The issuing of patent under the act is a ministerial act, and the patent is mere evidence of title in the class of cases to which this belongs.

TITLE MAY BE CONVEYED BEFORE PATENT ISSUES.—Where W. and wife resided upon and cultivated a land-claim under the Donation Act, and made proof of compliance with the provisions thereof, they have had, since the amendment of 1854, full power of alienation by deed before the issuance of patent.

TITLE OF MARRIED WOMAN, WHERE CONVEYANCE IS MADE AFTER COMPLIANCE WITH THE STATUTE, AND WHERE SUCH MARRIED WOMAN DIES BEFORE PATENT ISSUES, PASSES.—W. and wife, after full compliance and proof, and since the passage of said amendment, having alienated by deed, the wife having died before issuance of patent, the patent when issued being to W. and wife and their heirs: *Held*, that the sale was valid and effectual to pass the title, and bound the title which would otherwise have come to her heirs by reason of her death.

Points decided.

CONVEYANCE—QUITCLAIM.—Under the laws of Oregon, a deed of quitclaim and release is sufficient to pass all the estate which can be conveyed by a deed of bargain and sale.

CERTIFICATE OF AN OFFICER—PAROL EVIDENCE NOT ADMISSIBLE TO IMPEACH, WHEN.—Where the certificate of an officer to acknowledgment of a deed appears on its face to be in substantial compliance with the statute, parol evidence to impeach it is inadmissible, unless there are allegations in the pleadings to warrant it.

PRESUMPTION THAT AN OFFICER DOES HIS DUTY.—The law presumes that a person acting in a public office was regularly appointed to it, and also that official duty has been regularly performed.

JUDICIAL KNOWLEDGE.—The courts are charged with knowledge of the acts of the Legislative Assembly in virtue of which county superintendents of common schools proceed in the sale of school lands to private individuals.

PRESUMPTION IN FAVOR OF DEED OF SCHOOL SUPERINTENDENT.—The deed of such superintendent is to all intents and purposes a patent from the State, and if regular on its face, the *power* of the grantor need not be first shown in order to admit the deed. It will be presumed until the contrary is shown.

ERROR.—Error must be affirmatively shown by the record; it will not be presumed.

RECORD—WHEN OFFERED IN EVIDENCE, ERASURES MUST BE EXPLAINED, IN WHAT CASES.—Where a record which is offered in evidence is interlined, erased and mutilated, the interlineations, erasures and mutilations should be fully and satisfactorily explained, especially where it is sought, by a record in such condition, to contradict a certified copy which appears to have been formally and regularly transcribed.

IDEM.—In order to overcome such certified copy by a record in which erasures, interlineations and mutilations appear, the offer should be to prove that the certified copy was not a true copy of the record at the time it was made.

AFTER-ACQUIRED ESTATE—CONVEYED BY COVENANT OF WARRANTY.—A deed containing a covenant of warranty operates to transmit any after-acquired estate of the grantor.

ERROR—DOES NOT RENDER JUDGMENT VOID, WHEN.—Error does not render a judgment void when attacked collaterally.

JUDGMENT—VOID ONLY FOR WANT OF JURISDICTION.—A judgment is only void when the court rendering it had not jurisdiction of the parties or the subject-matter of the controversy.

SALE—PROVISION REQUIRING PROPERTY SOLD IN SEPARATE PARCELS, DIRECTORY.—The provision of the Code, that when a sale is made of real property upon execution, and the real property consists of several known lots or parcels, they shall not be sold separately, is directory.

ORDER CONFIRMING SALE.—An order confirming a sale upon execution is a conclusive determination of the regularity of the proceedings concerning the sale, as to all persons in any other action, suit or proceeding.

SHERIFF'S DEED—RECITALS IN.—Where the preceding and necessary steps

have all been regularly taken, a sheriff's deed is evidence of title, and the recitals therein are *prima facie* evidence.

ESTOPPEL IN EJECTMENT.—In ejectment, where both parties derive their title from the same person, neither is at liberty to deny that such person had title.

CERTIFICATE OF PURCHASE AT TAX SALE—EVIDENCE OF EQUITABLE TITLE—PARTY CLAIMING UNDER, MUST FIRST SHOW, WHAT.—A certificate of purchase at a tax sale does not convey a legal title. It is, however, evidence of an equitable title. A party claiming any rights under a tax-sale certificate must first show strict compliance with the statutes in all steps necessary to be taken previously to the execution of such certificate.

EVIDENCE—DECREE.—A decree which operates as a deed may be admitted as evidence in an action of ejectment.

TENANT IN COMMON MAY RECOVER COMMON PROPERTY.—A tenant in common of real estate may recover the entire common property in ejectment as against a stranger.

CROSS-BILL—CANNOT BE FILED, WHEN.—Where an answer sets up a full and complete legal defense to an action, a cross-bill in equity cannot be filed under § 377 of the Code.

APPEAL from Polk County.

This was an action of ejectment brought by respondent Dolph to recover possession of nine hundred and twelve acres of land, situated in Polk County, Oregon. The opinion of the court contains a digest of the pleadings. A cross-bill was filed in the court below, which, after setting forth various matters of inducement, alleged that a decree in a certain suit, wherein one Scovell was plaintiff and one Barney was defendant, and by which a certain deed hereinafter to be described was declared void, was procured through fraud and perjury. This cross-bill was stricken out on motion. The ruling of the court in striking out the cross-bill is assigned as error by appellant.

The following writings were offered by the respondent in the court below, and were received in evidence: Patent from the United States to John Waymire and wife Clarissa, to six hundred and forty acres of land, issued in 1873; deed from John Waymire and wife to Riggs, dated December 9, 1867, recorded December 27, 1867; certified copy of deed from John T. Outhouse, for two hundred and seventy-two acres of land, the remainder of the nine hundred and twelve

acres, as superintendent of common schools for Polk County, to said Riggs, dated January 17, 1861; deed from Riggs and wife to Haworth, dated February 21, 1866; deed from Haworth and wife to Scovell, dated July 26, 1867; deed from Scovell to Thayer, dated December 21, 1872; deed from Thayer and wife to Dolph, dated April 28, 1874; judgment-roll in the case of *Mallory et al.* v. *Scovell*, in the County Court of Marion County, dated July 7, 1873, during a regular term; execution in due form, dated August 5, 1873, and directed to the sheriff of Polk County, with the usual command; notice of sale, describing the premises levied on, and setting forth that they were to be sold on three executions: one in favor of S. W. Smith, another in favor of Samuel Parker, and another in favor of Mallory *et al.*, the judgments in both these last cases being assigned to S. W. Smith; return on said execution by the sheriff of Polk County, showing sale of the premises in controversy to S. W. Smith, on September 27, 1873; order of the County Court of Marion County, confirming said sale, entered in term time, February 13, 1874; deed of S. T. Burch, sheriff of Polk County, to J. H. Mitchell and J. N. Dolph, dated April 20, 1874, and reciting the execution, the sale to S. W. Smith and order of confirmation; also that said Mitchell and Dolph, being lien creditors of Scovell, did, in due form of law, redeem the premises from said sale.

The ruling of the court in admitting these writings, except in admitting the patent to Waymire, is in each instance assigned as error relied upon by the appellant on appeal.

A deed from Scovell to appellant Barney, dated February 15, 1870, and duly witnessed, acknowledged and recorded, was offered in evidence by appellant and received by the court.

The following writings were offered in evidence by the appellant, and were rejected by the court, which rulings are, in each instance, assigned as errors relied upon on appeal: Deed from John Waymire to Harlow Barney, the appellant, dated August 18, 1873; deed from Mary A. Waymire, heir at law of John and Clarissa Waymire, to Barney, dated August 18, 1873; certificate of tax sale, in due form,

by the sheriff of Polk County to S. W. Smith, dated February 24, 1874.

Respondent then offered in evidence a decree of the Supreme Court of Oregon, in a suit by Scovell against Barney, setting aside the deed of February 15, 1870, from Scovell to Barney. The evidence was admitted by the court, and this ruling is assigned as error by the appellant. The decree is as follows:

"It is adjudged and decreed that the said decree of the said Circuit Court, so appealed from, be and the same is hereby, in all things, reversed; that the deed executed by said appellant, Ezra Scovell, to the respondent, Harlow Barney, dated February 15, 1870, which purported to convey the following described premises, to wit (here follows description), was procured by fraud, and is fraudulent and void, and that the allegation of the complaint is true. And it is further ordered, adjudged and decreed, that said deed be, and the same is hereby set aside, and held for naught and cancelled of record, and that the said respondent make, execute and deliver to the said appellant, within ten days after the entry of this decree in the court below, a good and sufficient deed to the said above-described premises, and, in default thereof, it is ordered and adjudged that this decree stand for such deed."

Then follows an order for the payment by the clerk of certain moneys deposited by Scovell to Barney, etc. This decree was entered in the journal of the court below on February 26, 1873.

Appellant offered testimony to impeach the certificate of acknowledgment in the deed of Clarissa Waymire, and to show that said Clarissa did not sign the said deed freely and without fear or compulsion, and that she was not examined as to such signing separate and apart from her husband. The court rejected the testimony, and this ruling is assigned as error. Appellant also offered the record of deeds for Polk County in evidence to prove that the certified copy of the deed of Outhouse was not a true copy, which was rejected by the court. This ruling is assigned as error. The

court gave the following instructions to the jury, which appellant excepted to and assigns as errors in this appeal:

1. "But the only evidence offered by defendant Barney, which was admissible under the rules of evidence, was the deed of Ezra Scovell to him of date February 15, 1870."

2. "It is the duty of all good citizens to respect and obey the mandates of the Supreme Court and its adjudications, so long as they may stand unreversed; and when a conveyance has been adjudged fraudulent and void by the highest judicial authority of the State, it is in contempt of that authority for a person to disregard it and set it at defiance, in any other way than by the legitimate means recognized and provided by law."

3. "And one tenant in common may, in an action of ejectment, recover the possession of the entire premises owned by him and his co-tenant, if the evidence shows that they are entitled to the possession thereof as against the defendant in the action."

The judgment-entry in the case of *Mallory et al.* v. *Scovell*, offered in evidence by the respondent and received by the court, is, in its material part, as follows: "And the court having fully heard and considered the allegations and proofs of the parties, and the argument of counsel; it is ordered and adjudged by the court that the plaintiffs have and recover of the defendant herein the sum of fifty dollars, together with the costs and disbursements of this action, taxed at the sum of nineteen and fifty-five one-hundredths dollars, and that execution issue therefor." Dated July 7, 1873, during a regular term.

*R. P. Boise, P. C. Sullivan, and Daly & Myers,* for Appellant.

Under the donation law, a conveyance by a settler before patent issues, although he has fully complied with the requirements of the act, conveys nothing more than the naked possession. The patent, when issued, carries the fee-simple title direct from the government to the patentee. (Donation Act, §§ 4 and 8; 1 Deady, 378, 379, 381, 452; 2 Washb.

on Real Prop. 311 to 317; 13 Wall. 102, 431; *Mizner* v. *Vaughn,* Deady, J., Decisions Supreme Court, 1872, 256.)

In an action of ejectment, parol evidence is admissible to impeach the certificate of acknowledgment, and of private examination by the officer, of a married woman's deed. (4 John. 161, 469 : 12 Id. 469; 1 Id. 498; 2 Wend. 308; 10 Minn. 427; 18 Md. 305; 23 Cal. 259; 2 Phil. Ev. 587, 590, 591; 1 Greenl. Ev. 289; 3 Washb. 192.)

A deed executed · by a school superintendent to school lands belonging to the State, upon a public sale made for that purpose, cannot be received in evidence until it is first shown that the requirements of the statute have been complied with.

A certified copy of a deed having been offered in evidence, the original record of deeds may be introduced to prove that the said certified copy is not a true copy. (Cited in support of both the above propositions: Session Laws, 1855, 69; Mis. Laws, ch. 6, 27; Civil Code, §§ 734, 735; 4 Wheat. 77; 4 Cranch, 405; 5 Hamm. 370; 6 Mart. Lou. 347; 2 Gill & J. 114; 4 Id. 323; 4 Dana, 567; 3 Mon. 99; 1 Id. 154; 1 Denio, 145; 3 Id. 242; 25 Wend. 465; 38 Barb. 92; 18 John. 501; 11 Wend. 425.)

In admitting the deeds from Riggs and wife to Haworth, from Haworth and wife to Scovell, from Scovell to Thayer, and from Thayer and wife to Dolph, the court erred. To make them admissible a good legal title must first be shown in Riggs, Haworth or Scovell. To recover in ejectment the plaintiff must show that he holds the better legal title. (53 Barb. 155; 12 Ill. 420.)

A certified copy of a judgment is not admissible in evidence when it is disclosed in the record that there was issue joined upon a question of fact, in the cause in which the judgment was rendered, and it does not appear that a jury was waived or that there was any findings of fact by the court sitting as a jury. (Civ. Code, §§ 176, 178, 215; 15 Ky. 74; 1 Scam. 553; 12 Mich. 120; 16 Cal. 103; 29 Mo. 22; 4 Bosw. 663; 22 Mo. 583; 6 Bosw. 668; 14 How. Pr. 426; 2 Wheat. 221, 225; Freeman, § 117; Statute of Mich., § 3440.)

An execution is not admissible in evidence to prove title derived through sale thereunder, when it appears that the premises were sold as a whole and not in separate parcels; neither is the confirmation by the County Court of such sale admissible, when it appears that the purchaser at the sale was the judgment creditor. (1 John. Ch. 592; 6 Id. 411; 18 Johns. R. 355.)

The sheriff's deed under such sale is inadmissible as evidence, for the reasons contained in the last two statements above. And further, it must appear that the grantees in in such deed have redeemed the premises from the purchaser at the sale or from some other redemptioner, or that they have the right to redeem, or have taken the necessary steps to redeem. (Rorer, 312, 316; 7 Hill, 177; 27 Barb. 55; 34 N. Y. 235; 4 Wheat. 77; 4 Cranch, 403; 9 Id. 64; 7 Cow. 88; 3 N. H. 340; 8 Lou. 195; 10 Id. 286; 1 Seld. 366; 2 Denio, 323; 2 Com. 66; 10 Bosw. 60; 4 Dana, 567; 1 Minn. 155; 3 Id. 99; 18 Wend. 598; 20 Id. 555; 2 Id. 120; 19 Barb. 644; 3 Hill, 619; 12 N. Y. 575; 12 Cal. 124; 4 Hill, 76.)

A purchaser at a tax sale, upon the receipt of his certificate of sale from the sheriff, is entitled to immediate possession of the premises purchased, or to the rents and profits, if the same are under an unexpired lease, and his right then becomes vested. A tax title outstanding in another person, unredeemed, will prevent a plaintiff in ejectment from recovery until redeemed by him. (Tyler on Ejectment, 564; Mis. L., ch. 57, §§ 82, 88; Blackwell, 293, 296, and ch. 16; 29 Iowa, 356; 18 Wis. 45; 14 Ill. 136; 15 Cal. 541; 4 Gil. 274, 278; 11 Paige, 484.)

Plaintiff in rebuttal offered in evidence a decree of the Supreme Court of the State declaring void a deed which forms a link in one of appellant's chains of title, which was received. Such decree, if good, constitutes no legal title upon which recovery can be had in ejectment. (3 How. U. S. 750.)

*W. W. Thayer and E. C. Bronaugh,* for Respondent.

Upon the completion of the residence and cultivation

prescribed in the Donation Act, the title of the settler becomes complete. The patent when issued is simply the evidence of a previously acquired title. (2 Or. 236, 267; 1 Deady, 113; 3 Or. 396; 2 How. U. S. 344; 3 Dallas, 465; 8 Op. Atty.-Genl. 247; 9 Id. 42.)

The court did not err in excluding evidence to impeach the certificate of acknowledgment in the deed of John Waymire and Clarissa, his wife, to Riggs. Title-deeds, regular upon their face, cannot be impeached in an action of ejectment against one who was not a party to them. (1 Or. 17; 8 Wall. 109; 65 N. C. 619; 42 Ill. 518; 18 Iowa, 90.)

The certified copy of the deed of the school superintendent was properly received in evidence, and the record-book, containing a record of said deed, to prove that the said copy was not a true copy, properly rejected. It is a presumption of law that a person acting in a public office was regularly appointed to it, and that official duty has been regularly performed. (Civil Code, § 766, Subd. 14, 15; Greenleaf Ev., §§ 83, 92; 5 Denio, 597.)

Appellant is estopped to deny Scovell's title. Where both parties in ejectment claim under the same grantor, they are mutually estopped to deny his title, and the plaintiff need not show title in such grantor. (1 John. Ca. 81; 12 John. 201; 13 John. 316; 1 Cow. 613; 3 Barb. Ch. 528; 1 Coms. 491; 38 Geo. 597; 6 Wall. 715; 4 Pet. 11, 83; 5 Dana, 271; 9 Paige, 649; *Doe* v. *Oliver*, Smith's Leading Cas. 712.)

The certified transcript of a judgment offered in evidence by respondent was properly received. A judgment cannot be impeached collaterally, and especially by a stranger, on grounds merely affecting its regularity. Matters which show it void may be insisted on. (*Voorhes* v. *Bank*, 10 Pet. 475; *Thompson* v. *Tolmie*, 2 Pet. 169.)

It is a matter largely in the discretion of the court as to the order in which parties may introduce their evidence. (*Bedell* v. *Powell*, 13 Barb. 183.)

An order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale, as to all persons in any other action, suit or proceeding whatever. (Civ. Code, § 93, Subd. 4.)

The objection that two or more adjacent parcels of land were sold in gross comes too late after the time for redemption has passed, in the absence of fraud, injury, mistake or illegality, or other evidence than the mere return of the sheriff. (*Griswold* v. *Stoughton,* 2 Or. 61.)

The objection that there is no evidence that Mitchell and Dolph were lien creditors of Scovell, or had a right to redeem of the execution purchaser, is not well taken. The recitals in the sheriff's deed, although liable to be disproved, are yet *prima facie* evidence of the facts recited, and are sufficient until disproved. (*Stafford* v. *Williams,* 12 Barb. 244; *Jackson* v. *Vanderheyden,* 17 Johns. 167; *Jackson* v. *Sternberg,* 20 John. 49; *Jackson* v. *Roberts,* 7 Wend. 83; *Jackson* v. *Roberts,* 11 Wend. 422.)

The recitals in a conveyance for a sale for taxes are not evidence unless the statute so declares. The facts recited must be established *aliunde.* A simple *certificate* of a tax sale is not entitled to be read in evidence unless its execution be first proved. (*Sharp* v. *Spier,* 4 Hill, 76; *Varick* v. *Tallman,* 2 Barb. 113; *Hill* v. *Draper,* 10 Barb. 454; *Hoyt* v. *Dillon,* 19 Barb. 644; *Jackson* v. *Shepard,* 7 Cow. 88; *Wilding* v. *Homer,* 50 Ill. 50.)

One tenant in common may, in an action of ejectment, recover the possession of the entire premises owned by him and his co-tenant, if the evidence shows that they are entitled to the possession thereof as against the defendant in the action. (*Stark* v. *Barrett,* 15 Cal. 371; *Touchard* v. *Crow,* 20 Cal. 162; *Hart* v. *Robertson,* 21 Cal. 346, 348; *Sharon* v. *Davidson,* 4 Nev. 416.)

By the Court, McARTHUR, J.:

This was an action of ejectment brought by Dolph against Barney and Holman, to recover possession of nine hundred and twelve acres of land in Polk County, and particularly described in the complaint. It is alleged that Dolph is the owner in fee-simple of an undivided five-eighths of the premises described, as tenant in common with one Mitchell, who is the owner of the remaining three-eighths, and that he, Dolph, is entitled to immediate possession as against

Barney and Holman, who wrongfully withhold possession from him. Holman answered separately, that he had no interest in the premises except that he was in possession as tenant under Barney, and asked that Barney be made sole defendant. Barney answered denying the allegations of the complaint, and setting up title in himself to a portion of the premises in dispute, and title in the State of Oregon as to the residue, and also an outstanding tax title to the whole tract in one S. W. Smith, unredeemed. The reply denies all the averments of new matter in the answer, and the cause was tried upon the issues joined in the pleadings filed by Dolph and Barney.

Upon the trial, Dolph, to prove his alleged title, offered in evidence a patent from the United States to John Waymire and Clarissa Waymire, his wife, to six hundred and forty acres of the land in dispute. To this no objection was interposed. Thereupon Dolph offered in evidence a quitclaim deed to said six hundred and forty acres from John and Clarissa Waymire to M. S. Riggs, of date December 9, 1867. It was admitted by the parties that Waymire and wife were donees of the United States, under the Donation Act; also, that Clarissa died before the issuance of patent or patent certificate, but that, before her death, she and her husband had resided upon and cultivated said six hundred and forty acres, and had performed all the requirements of the act so as to entitle them to a patent. Objection was made to the introduction of said quitclaim deed as evidence of title in Dolph (who deraigns title from Riggs), for the reason that, although executed subsequently to the four years' residence and cultivation, and filing of proofs, required by said Donation Act, yet, as it was executed before the issuance of patent or patent certificate, it was ineffectual to carry the title.

The court overruled the objection, and such ruling is charged as error.

Without dwelling upon the importance of the question presented, further than to remark that it was one of the most important that has ever arisen under the Donation Act, we proceed at once to its discussion. In *Lee* v. *Sum-*

*mers* (2 Or. 266), this Court, having under consideration the rights of a donee of the United States under the act, held the words thereof to be words of present grant, actually conveying the legal title to the premises, and said: "When Congress grants lands in words of present grant, the legal title passes to the grantee. (13 Pet. 499; 6 Cranch, 128; 8 Id. 244; 2 Wheat. 198; 12 Pet. 454.) The cases just cited show that the title vests immediately in the donee, none the less because the title vests in him conditionally, and subject to be defeated by his failure to comply with the law, nor because the boundaries are yet to be determined." Some time prior to the rendition of the opinion just cited, the case of *Chapman* v. *School District No. 1*, arose in the United States Circuit Court, and Justice Deady (1 Deady, 113), in passing upon the character of the grant, said: "The donation law is a grant in the present, and gives the fee-simple to every settler who avails himself of its provisions from the date of his settlement. (2 How. 76; 11 Opinions Attorneys-General, 29.) True, until the completion of the subsequent conditions of residence and cultivation, and proof thereof, it is an estate upon condition —what is known at common law as a base or conditional fee, subject to be defeated or lost by a failure to perform the conditions upon which it is held. But it is an estate in fee nevertheless, and upon the completion of the residence and cultivation, or other conditions, it becomes absolute and unqualified." In *Lamb* v. *Davenport* (1 Sawyer, 632), Justice Sawyer held the terms of the act to be terms of present grant, notwithstanding the grant itself was liable to be defeated by a failure to perform the conditions subsequent.

To the views of the character of the grant, as expressed in the opinions referred to, we yield our full assent, and hold the Donation Act to be a grant *in præsenti* of an estate in fee, subject to be defeated by non-compliance with the conditions subsequent therein expressed. Upon the completion of the residence and cultivation required by the fourth section, the conditions of defeasance no longer attached, and the estate, from a base or qualified fee, became

a fee-simple absolute, which, by relation, must he held to have had its inception at the date when the donees first entered upon the land with the intention of complying with the requirements of the law.

The title of John and Clarissa Waymire |in no way depended upon the issuance of patent, for the issuance thereof under this act is a ministerial act, and the patent itself mere evidence of title. Even if this were not so, still their right to a patent having vested, they must be regarded as having the patent. (*Stark* v. *Starrs*, 6 Wall. 402.)

As against this position, counsel for appellant cite *Gibson* v. *Chouteau* (13 Wall. 102). In that case Justice Field, who delivered the opinion, quotes from the opinion of the court in *Bagnell* v. *Broderick* (13 Pet. 450), as follows: "Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the Federal Government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title. Until its issuance the fee is in the Government, which by the patent passes to the grantee, and he is entitled to recover in ejectment." Both these cases arose under an act of Congress of February 17, 1815, for the relief of the New Madrid sufferers. In the first section of that act it is provided that those owning lands which were injured by the earthquake of November 10, 1812, "shall be and they are hereby authorized to locate," etc. (3 Stat. at Large, 211.) Those words do not import a present grant, as do the words "there shall be and hereby is granted," etc., in the fourth section of the Donation Act of September 27, 1850. (9 Stat. at Large, 497.)

While, therefore, we are not disposed to question the correctness of the ruling in *Bagnell* v. *Broderick*, or in *Gibson* v. *Chouteau*, we do not think that they are parallel cases to the one before us, nor do we think that the patent is the superior and conclusive evidence of legal title to lands granted under all other acts of Congress. In *Wilcox* v. *Jackson* (13 Pet. 486), which arose under the Pre-emption Act of June 19, 1834 (4 Stat. at Large, 678), Justice Barbour, having decided that nothing but a patent passes a

perfect and consummate title, excepts from this general rule that class of cases where an act of Congress grants lands, as is sometimes done, in words of present grant. The Donation Act must certainly be regarded as falling within the excepted class.

Having reached the conclusion that the title vested in virtue of the act, the question arises whether John and Clarissa Waymire had power to alienate their estate. The quitclaim deed·to Riggs was executed in 1867, long after they had complied with the conditions of the Donation Act, and made due proof thereof, but before the issuance of patent.

Under the proviso in the fourth section, all future contracts for the sale of lands granted were declared void. By the amendatory act of July 17, 1854, that proviso was repealed, and since that time donees have had full power of alienation in all cases where they had resided upon the land for four years and made the proper proof of residence and cultivation. The original and amendatory acts, being *in pari materia*, must be construed together. Hence, since the passage of the amendment of 1854, where married persons have complied with the provisions of the original act, and either have died before patent issues, the survivor and children, or heirs of the deceased, are entitled to the share or interest of the deceased in equal proportions, except where the deceased has otherwise disposed of it by testament, or has alienated it by deed duly executed according to law. Therefore the quitclaim deed from John Waymire and Clarissa, his wife, to M. S. Riggs, was executed at a time when they had full power of alienation.

In this connection it must be borne in mind that under our statute a deed of quitclaim and release, of the form in common use, is sufficient to pass all the estate which a grantor can lawfully convey by a deed of bargain and sale. (Mis. L., ch. 6, ? 3.)

The bill of exceptions shows that the patent was issued to John Waymire and wife. From the analogies of *Lamb* v. *Davenport* (18 Wall. 317), we are of opinion that as the sale of Waymire and wife to Riggs was valid it was binding

upon the title which would otherwise have come to her heirs by reason of her death.

After the admission of the quitclaim deed from the Waymires to Riggs, the appellant's counsel, though somewhat irregularly, offered to introduce evidence tending to show that Clarissa Waymire did not sign the same freely and voluntarily, and that she did not acknowledge the same separate and apart from her husband. The respondent's counsel objected, and the court sustained the objection, which ruling is charged as error.

That a deed may be set aside, or the enforcement of its terms successfully resisted, on the ground of fraud or imposition, when the deed is itself the subject of litigation in a court of equity, is a well-settled and a familiar principle; but, in an action of ejectment, we are of opinion that no evidence should be received to invalidate an acknowledgment of a deed when such acknowledgment meets the requirements of the statute. The certificate of acknowledgment to the deed of John Waymire and Clarissa, his wife, to Riggs, comes up with the bill of exceptions, and an inspection thereof shows that it conforms to the statute. In all such cases the deed may be read in evidence without further proof thereof. (Mis. L., ch. 6, § 22.)

We have examined the authorities relied upon by appellant's counsel. Some of them seem to support the position taken, but most of them will, upon examination, be found to be cases where the evidence offered was designed to supply proof of facts necessary to give validity to the acknowledgment. With these we have nothing to do; the others we will proceed to examine.

The case of *Jackson* v. *Humphrey* (1 John. 497) was an action of ejectment tried in 1806. The principal point in controversy was in relation to the admission of certain testimony tending to show that the judge, before whom the proof of the execution of a certain deed was taken, was, at the time of taking the same, out of the jurisdiction of the State.

The testimony was declared admissible. The report of the case is very meagre, and the opinion is not so apparently well considered as to be ranked as an approved precedent.

*Jackson* v. *Schoonmaker* (4 John. 160) was an action of ejectment tried in 1809. A deed was introduced and its admission objected to, because there was no evidence of possession accompanying it, and therefore not to be received as an ancient deed. An offer was also made to show that one of the grantors was *non compos mentis* at the time of the acknowledgment. The court held that the certificate of the proof or acknowledgment of a deed, taken before a judge, is not conclusive, but the party affected by the deed may contest its validity and the force and effect of the formal proof.

*Jackson* v. *Hayner* and *Jackson* v. *Ferguson* (12 John. 468) were actions of ejectment tried in 1815. The title of both parties was derived from the same source. The question in these cases was whether a certain assignment, indorsed on a certain lease, was fraudulent and void. The point decided was, that where an illiterate man is induced to sign a deed by a misrepresentation of its nature and contents, the deed is void.

*Jackson* v. *Perkins* (2 Wend. 304) was an action of ejectment tried in 1829. The material question was as to the delivery of the deed. The only evidence of its delivery was the proof of its execution by one of the subscribing witnesses, before a master in chancery, for the purpose of putting it upon record. Among other things the court declared that proof or acknowledgment is *ex parte,* and any person who may be affected by the deed may, at any time, question its validity and show that in fact it was not duly executed or delivered. The cases in 4 and 12 Johnson, *supra,* are cited in support of this position.

These cases were all tried under the general issue, and, as near as can be ascertained, under a statute which declared that "neither the certificate of acknowledgment or of proof, nor the record, is conclusive, but may be rebutted and the force and effect thereof contested by any party affected thereby. If the contestant shows that the proof was taken on the oath of an interested or incompetent witness, neither the conveyance nor record can be received in evidence until

established by other competent proof." (1 Rev. Stat. 759, § 17.)

We have been unable to find any cases in New York, since the adoption of the Code, holding the doctrine of the cases just noticed.

*Edgerton* v. *Jones* (10 Minn. 427) is not in point. That was an action brought by the plaintiff against A. B. Jones, Mary M. Jones, his wife, and others, to foreclose a mortgage purporting to be executed by defendants, A. B. and Mary M. Jones. The only issues made in the pleadings, material to the points decided, are in regard to the execution and acknowledgment of the mortgage by defendant, Mary M. Jones. The cause was tried by a referee, who admitted parol testimony to contradict the official certificate of the acknowledgment of the mortgage. This the court held not to be error. We presume that in a suit in equity, and upon issue joined by the pleadings, it would not be contended that evidence tending to contradict a certificate of acknowledgment would not be admissible. In the opinion, in the case just cited, it is stated that the question presented was fully discussed and decided in *Dodge* v. *Hollingshead* (6 Minn. 25). That case has not been furnished us, and we have been unable to ascertain the length to which it goes. It is evident, however, that the opinion did not meet with the unqualified approval of the court in *Edgerton* v. *Jones,* for, after referring to *Dodge* v. *Hollingshead,* it is said, "We acquiesce in the conclusion arrived at, so far as the case at bar is concerned."

We are of opinion that the true rule upon this question is that laid down in *Graham* v. *Anderson* (42 Ill. 514). That case was much stronger than the one before us, for there were allegations touching privy examination of the wife, etc. The court, after discussing some other features of the case, said: "But another more important question remains, and that is, in the absence of fraud or imposition, in proving the execution of a deed by a wife, is parol evidence admissible in an action of ejectment to impeach the certificate? We have examined the authorities on this point, and we think where the certificate of the privy examination of a married

woman is in the form required by statute, it is not sufficient, in order to impeach it, to allege that there was no private examination, that she did not acknowledge the deed as her act and deed, that she did not release her homestead right. There must be some allegation of fraud or imposition practiced toward her, some fraudulent combination between the parties interested and the officer taking the acknowledgment." (3 H. & McH. 321; 3 Whart. Pa. 557; 6 Texas, 208.) *Green* v. *Godfrey* (45 Maine, 25), which was an action of ejectment, is to the same effect.

We are therefore of opinion that in an action of ejectment, where the certificate of the officer as to the acknowledgment appears on its face to be in substantial compliance with the statute, parol evidence to impeach it is inadmissible, unless there are allegations in the pleadings to warrant it.

The respondent offered in evidence a certified copy of a deed from Outhouse, executed in the capacity of Superintendent of Common Schools for Polk County, to Riggs, for two hundred and seventy-two acres of land, the residue of the tract in controversy. The appellant's counsel objected, and urged as a reason therefor that no foundation was laid for its introduction. The court below overruled the objection, which ruling is charged as error.

It is contended that before a deed executed by a school superintendent to school land belonging to the State, after sale made, can be admitted as evidence, it must first be shown that the said officer had authority to sell the land, to execute the deed, and that he had fully complied with all requirements of the statutes in relation thereto.

This deed refers to the act of the Legislative Assembly in virtue of which it was executed, and bears upon its face evidence of having been executed according to the requirements prescribed by the act. This is not one of the cases in which the power of the grantor must first be shown in order to let in the deed. It is to all intents and purposes a patent of the State of Oregon; and, until the contrary is shown, we must presume that it was regularly executed and delivered by one having authority so to do. That a person act-

ing in a public office was regularly appointed to it, and that official duty has been regularly performed, are declared to be presumptions of law by the Code. (Civ. Code, § 766, Subd. 14, 15.) Besides, it is the duty of the courts to take judicial notice of the public and private acts of the legislative department. The court, being charged with knowledge of the law under which Outhouse acted, and the presumptions referred to applying to him and his deed, did not err in overruling the objection. If regular on its face, as it is, the burden of proof was upon appellant to show want.or excess of authority. (*People* v. *Mauran*, 5 Denio, 398.)

At this point appellant's counsel offered to show by the record of deeds which was in court, that the certified copy of the Outhouse deed, which had been admitted as evidence, was not a true copy of the record. At that stage of the trial such offer was irregular. Some system and order must be observed in the trial of a cause. (Civ. Code, § 194.) We have, however, examined into the assignment of error, based upon the ruling of the court below, in refusing to admit the record. The bill of exceptions does not show wherein there was any material difference between the certified copy and the record. If there was none, no error was committed in refusing to admit the record. Error must be shown affirmatively. We must presume that there was no substantial variance between the certified copy and the record, in the absence of anything showing that there was. It does appear, however, by the bill of exceptions, that "said record was interlined and erased and mutilated." Under such circumstances, we are of opinion that the party offering an interlined, erased or mutilated record, should also offer to fully and satisfactorily explain the interlineations, erasures and mutilation, especially where what purports to be a certified copy is fair upon its face, and regularly and formally drawn. The admission of interlined, erased or mutilated records is a matter of a very serious character, and where it is sought to contradict a certified copy by such record, we think the offer should be to show that the certified copy was not a true copy of the record at the time when it purports to have been transcribed.

The court admitted a number of deeds from Riggs, Haworth, Scovell and Thayer, overruling the objections of appellant's counsel. As error is charged in each instance, and, as the point presented and argued covers each deed, we have considered these assignments of error together.

The objection to the admission of the deed from Riggs to Haworth is based upon the assumption that Riggs had not been shown to have become possessed of the title to the entire tract. As, in our opinion, the Waymire deed carried to Riggs the six hundred and forty acres, and the Outhouse deed carried to him the two hundred and seventy-two and ninety-six one-hundredths acres, this objection cannot be sustained. The fact that the deed from Riggs to Haworth antedates the deed from Waymire and wife to Riggs, is a matter of no consequence, for it contains a covenant of warranty, and had the effect to immediately transmit to Haworth any after-acquired estate of his grantor. (*Jackson* v. *Murray*, 12 John. 201; *Jackson* v. *Stevens*, 13 John. 316; *Jackson* v. *Hubble*, 1 Cowen, 613; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 528.)

The objections to the admission of the deeds from Haworth to Scovell, from Scovell to Thayer, and from Thayer to Dolph, were that no title had been shown in Haworth, or Scovell, or Thayer. Having reached the conclusion that Riggs had title, these objections cannot prevail.

The respondent offered in evidence a certified transcript of a judgment of the County Court of Marion County, as a portion of one of the links in his chain of testimony. Appellant's counsel objected, for the reasons that the trial was had by the court without the intervention of a jury; that the judgment entry did not show that jury had been waived, and that there were no findings of the court to support the judgment. The transcript was admitted, notwithstanding the objection, and this is charged as error. The bill of exceptions, and accompanying exhibits, show this to have been a judgment in favor of Mallory et al., and against Ezra Scovell. Barney is in no way connected with it.

Counsel claim that this judgment is a nullity, for the reason that it shows the defects mentioned in the objection.

The judgment of the County Court of Marion County is not a void judgment; and, in view of the authorities, we are not at liberty to declare it a mere nullity, because the journal entry does not contain the findings of fact. It is irregular and erroneous, and the irregularities and errors would doubtless have been corrected upon appeal. The attack now made upon it is collateral, and by a stranger. Error does not render a judgment void when attacked collaterally. A judgment is only void when the court rendering it had not jurisdiction of the parties to the judgment, or the subject-matter of the controversy. In *Winston* v. *Affalter* (49 Mo. 267), which was ejectment, a similar question to that raised in this case was presented. There were some irregularities in entering the judgment, which was offered in evidence, and the court held that the parties attacking the judgment, being strangers to that record, had no right to attack it collaterally, and thereby call in question the alleged irregularities. We have examined all the authorities cited by appellant's counsel upon this point which we have been able to procure, and the cases are rendered inapplicable, for the reason that they are direct attacks upon the judgments by appeal.

Respondent then offered a copy of an execution on said judgment in the County Court of Marion County, and the return thereon, together with the notices of a sale of the property in question to satisfy the same. Appellant's counsel objected, for the reason that the premises were sold as a whole, and not in separate parcels; and for further reason, that the notices described three several executions in three different causes. This testimony was admitted against the objection, and error is charged therefor. We think the case of *Griswold* v. *Stoughton* (2 Or. 61), settles this point against the appellant. The court then had under consideration, among other matters, the words "when the sale is of real property, and consisting of several known lots or parcels, they shall be sold separately," which occur in § 20, p. 124, of the statute of 1855; and it was held that that provision was directory, and not mandatory in its application. The identical language occurs in § 289 of the Civil Code. The question, therefore, is no longer an open one.

The order of the County Court, confirming the sale, entered February 2, 1874, was then admitted against the objections of the appellant's counsel, who contended that, from the proceedings previously offered being irregular and void, the same was inadmissible. We have already expressed our opinion upon so much of this objection as referred to the proceedings previously offered, and but one question is left, that is, as to the effect of the order. This question also grows out of the previous objection, and both objections, so far as relates to this question, will now be considered.

When a motion is made for the confirmation of a sale upon execution it is the duty of the court to examine into the regularity thereof, and before ordering confirmation to see that all the requirements of the statute have been complied with. After the order has been made confirming the sale, the regularity thereof cannot be questioned, for it is provided by § 293, subdivision 4, of the Code, that "an order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale, as to all persons in any other action, suit or proceeding whatever." The statute settles this point against the appellant.

Exception was also taken to the admission of the sheriff's deed, executed after the sale, upon the execution issued on the judgment of the County Court, which has already been considered. We are of the opinion that it was not error to admit the deed. The necessary and preceding steps having been all properly taken, a sheriff's deed is evidence of title in the grantee, and the recitals therein are *prima facie* and are sufficient evidence of the facts recited until disproved. (*Jackson* v. *Sternberg*, 20 John. 49; *Stafford* v. *Williams*, 12 Barb. 244; *Jackson* v. *Roberts*, 12 Wend. 422.)

The respondent then rested his case, and the appellant offered, without objection, a deed from Scovell to himself for the entire tract in controversy, which deed was dated prior to the deed from Scovell to Thayer, and prior also to the judgment upon which was based the sheriff's deed already mentioned. Thus it will be seen that both appel-

lant and respondent claim under Scovell, and this fact is important in its bearing upon many questions raised by the appellant's counsel. Had the court below erred (which it did not) in its rulings upon any of the questions in relation to admission of evidence prior to the admission of the deed from Scovell to said Thayer, and the judgment, execution, sale, order of confirmation and sheriff's deed, already sufficiently described, the appellant, it seems from the authorities, could not be considered as having been prejudiced thereby, for the rule is, that when both parties derive their title from the same person, neither is at liberty to deny that such person had title. (*Hightown* v. *Williams*, 38 Geo. 601; *Gaines* v. *New Orleans*, 6 Wall. 715.)

In relation to the quitclaim deed from Waymire to Barney (subsequent in date to the deed from Waymire and wife to Riggs), attention need only be attracted to the conclusion reached upon the first point presented in this case in order to show that Waymire, when he executed the deed to Barney, had no estate in the lands described; and from the views already expressed it also becomes apparent that the deed from Mary Waymire (admitted to be the daughter of John and Clarissa) conveyed no estate to the appellant.

Appellant's counsel offered to introduce in evidence a certificate of the sheriff of Polk County, showing a sale of the lands in controversy to one S. W. Smith, for the taxes for the year 1872. Upon objection, the court below refused to admit the certificate, for the reason that no proper foundation had been laid therefor. This ruling is charged as error. It is insisted that the tax certificate is regular, and that when a purchaser at a tax sale pays his money upon the acceptance of his bid and receives his certificate from the sheriff, he is entitled, instanter, to the possession of the premises purchased, or to the rents and profits, if the same are under an unexpired lease, and his right then becomes vested.

The certificate of purchase at a tax sale does not convey a legal title; it is, however, evidence of an equitable title to the land, and enables the purchaser to call in the legal title. (8 Ohio, 216.) As an officer in selling land for delin-

quent taxes exercises a mere naked power, based upon statutes in derogation of the common law, a party desiring to avail himself of a certificate of the character of the one under consideration for any purpose, must show, step by step, that everything has been done which the statute makes essential to the due execution of the power. (*Varick* v. *Tallman*, 2 Barb. 115.)

Upon the question whether the recitals in a tax deed are *prima facie* evidence, we do not pass, for that question is not before us, but we are of opinion that certificates of this character should not be admitted in evidence unless the rule above stated is complied with.

A question as to the admissibility of the tax warrant is made by the bill of exceptions, and was presented in argument. The bill shows that the warrant was offered, objected to and refused, and exception allowed. It alludes to the warrant as being attached to the bill and made part thereof. It is not, however, so attached, and there is nothing to show that any error was committed in rejecting it, for, as has been already stated, the error must appear affirmatively, and not appearing affirmatively we are obliged to presume that, upon inspection, the court below found the warrant defective or improperly issued, and hence rejected it.

We are of opinion that there was no error in admitting the decree of the Supreme Court, in the case of Scovell against Barney. That decree was not conditional. It was evidence tending to show that the deed from Barney to Scovell, which Barney had introduced, was cancelled. An inspection of the decree, which accompanies the bill of exceptions, shows that it was intended to operate as a deed in the event that Barney did not reconvey to Scovell within a certain time, and that time having passed, and no deed having been executed and delivered by Barney to Scovell, the decree operated as a deed.

The court below, among other things, instructed the jury "that the only evidence offered by defendant Barney, in support of his claim to title, which was admissible under the rules of evidence, was the deed of Ezra Scovell to him

of date February 15, 1870." This instruction was excepted to. Under the view we have taken of the various and numerous questions presented in this case, this instruction was correct, and could not have misled the jury. In the instruction upon the decree of the Supreme Court and the authority thereof, which was excepted to, there is no error. The instruction is a clear and correct statement of the law.

The court below also instructed the jury "that one tenant in common may, in an action of ejectment, recover the possession of the entire premises owned by him and his co-tenant, if the evidence shows that they are entitled to the possession thereof as against the defendant in the action."

It is charged that this instruction is erroneous. It is not, however, for it comports with the rule that a tenant in common of real estate may recover the entire common property in ejectment as against a stranger. (*Sharon* v. *Davidson,* 4 Nev.; *Hart* v. *Robertson,* 21 Cal. 346.)

The appellant also charges that the court below erred in striking out the cross-bill filed by him. Barney had already answered the complaint in ejectment, fully denying the plaintiff's title, and setting up title in himself, and title in another. Under such circumstances it is not proper practice to file a cross-bill, under § 377 of the Code. The cross-bill can only be allowed when the answer does not set up a complete legal defense.

It follows that the judgment of the court below must be affirmed.

Judgment affirmed.